## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA L. ERDMAN,** | : | **CIVIL ACTION NO. 1:05-CV-0944** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONWIDE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

### <u>MEMORANDUM</u>

Presently before the court is a motion for summary judgment (Doc. 42), filed by defendant Nationwide Mutual Insurance Company ("Nationwide"), on the claims of plaintiff Brenda L. Erdman ("Erdman"). The dispute in the instant case centers around Nationwide's decision to terminate Erdman's employment. Erdman asserts claims pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Pennsylvania Human Relations Act ("PHRA"), PA. STAT. ANN. tit. 43, §§ 951-963. Erdman also asserts a state law claim of breach of an employment contract. For the reasons that follow, Nationwide's motion for summary judgment (Doc. 42) will be granted in part and denied in part.

I.   **Statement of Facts**[1]

Erdman began her employment with Nationwide in 1980.  (Doc. 15 ¶ 6; Doc. 18 ¶ 7.)  In 1993, while still employed at Nationwide, Erdman gave birth to a daughter with a heart condition and Down Syndrome.  (Doc. 15 ¶ 7; Doc. 18 ¶ 8.)  In 1998, Erdman requested part-time work status "due to the needs of her disabled child."  (Doc. 15 ¶ 8.)  Erdman's request was granted by Patty Sarno ("Sarno"), who was then Erdman's supervisor.  (Doc. 15 ¶ 8; Doc. 18 ¶ 9.)  On January 25, 2002, Erdman requested a reduction to a four-day work week.  This request was also granted by Sarno.  (Doc. 15 ¶ 9; Doc. 18 ¶ 10.)

On April 22, 2002, Stella Getgen ("Getgen") replaced Sarno as Erdman's supervisor.  (Doc. 15 ¶ 11; Doc. 18 ¶ 12.)  On March 12, 2003, Getgen and others informed Erdman that her part-time position was being revoked and that her job would be eliminated if she did not accept a full-time position.  (Doc. 15 ¶ 13; Doc. 18 ¶ 14.)  On March 21, 2003, Erdman informed Nationwide representatives of her decision to accept the full-time position.  (Doc. 44 ¶¶ 7, 10; Doc. 60 ¶¶ 7, 10.)  During her meeting with Nationwide representatives, Erdman "sought confirmation that she would be able to use her previously scheduled vacation in August 2003, to care [for] and supervise her 10-year-old daughter."  (Doc. 60 ¶ 7.)  Erdman was informed by a Nationwide representative that it was "unlikely" that she would permitted to

---

[1]  In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Erdman, the non-moving party.  See infra Part II.

take the requested vacation.  (Doc. 44 ¶ 8; Doc. 60 ¶ 8.)  Erdman responded that she would request leave under the FMLA if her previous vacation request was not approved.  (Doc. 44 ¶ 9; Doc. 60 ¶ 9.)  To solidify her request for leave, Erdman submitted FMLA paperwork to Nationwide on April 22, 2003, seeking a period of leave that was to commence on July 7, 2003.  (Doc. 15 ¶ 14; Doc. 18 ¶ 15; Doc. 44 ¶ 30; Doc. 60 ¶ 30.)  On May 6, 2003, Erdman sent an email inquiring about the status of her FMLA request and asking that she be notified of Nationwide's decision by May 9, 2003.  (Doc. 15 ¶ 15; Doc. 18 ¶ 16.)

Meanwhile, on May 8, 2003, Getgen was monitoring telephone calls as part of a quality assurance program and discovered one in which Erdman stated: "O.K., hold on.  This is a personal call and should not be reviewed for quality purposes, assholes."[2]  (Doc. 44 ¶¶ 18-19; Doc. 60 ¶ 18.)  Getgen reported this language to her supervisor.  (Doc. 44 ¶ 19.)  The next day, Nationwide terminated Erdman's employment.  (Doc. 15 ¶ 16; Doc. 18 ¶ 17.)

Nationwide alleges that Erdman's employment was terminated because she engaged in "multiple incidents of inappropriate workplace behavior."  (Doc. 43 at 6.)  In addition to the recorded telephone conversation quoted above, Nationwide alleges that Erdman engaged in the following inappropriate behavior:  (1) accusing

---

[2]  Erdman disputes the admissibility of the recorded telephone conversation in a motion in limine (Doc. 58).  Even when considering the contents of the recorded telephone conversation, there are factual issues which preclude summary judgment with respect to Erdman's ADA and PHRA claims.  See infra Parts III-B and III-C. Therefore, the court need not decide the issues presented by Erdman's motion in limine (Doc. 58) at this juncture.

Getgen of "lying, retaliating against employees, and creating a hostile work environment," (2) forwarding a copy of an admonishment received from Getgen to other Nationwide employees, (3) attempting to solicit the assistance of a corporate officer in another state with respect to the elimination of her part-time position, (4) inflating the issue of "Friday dress down day" into one involving multiple levels of management, (5) directing other associates to work more slowly to avoid increasing the company's production standards, and (6) questioning other associates about the amount of their salary increases.  (Doc. 44 ¶¶ 11, 23, 26.) Erdman denies these allegations and counters that her termination was the culmination of "a focused and insidious campaign by her supervisor and other Nationwide managers . . . to develop pre-textual bases upon which to fire her to prevent her from taking FMLA leave."  (Doc. 61 at 6; Doc. 60 ¶¶ 11, 23, 26.)

Erdman commenced the instant action on May 9, 2005 and filed an amended complaint on March 3, 2006.  (See Docs. 1, 15.)  Erdman alleges that Nationwide: (1) interfered with her rights under the FMLA, (2) retaliated against her in violation of the FMLA, (3) discriminated against her in violation of the ADA and PHRA, and (4) breached the terms of her employment contract.  (Doc. 15.)  Nationwide subsequently moved for summary judgment on Erdman's claims.[3]  (Doc. 42.)  The motion has been fully briefed and is ripe for disposition.

─────────────────

[3] Nationwide filed a motion to dismiss Erdman's claims under the ADA, which remains outstanding.  (See Doc. 15.)  The motion to dismiss raises the same arguments as the instant motion for summary judgment; accordingly, the motion to dismiss will be denied as moot.

II.   **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

III.   **Discussion**

Nationwide's decision to terminate Erdman's employment prompted Erdman to assert claims based upon the FMLA, the ADA, the PHRA, and common law breach of contract principles.  Nationwide now asks the court to grant judgment in its favor, arguing that Erdman has failed to establish a *prima facie* case with respect to each of her claims.  The court will address Erdman's claims *seriatim*.

A.    **FMLA**

The FMLA was enacted to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1); Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004). It permits eligible employees to take "reasonable leave for medical reasons," including caring for a spouse, child, or parent who suffers from a "serious health condition." 29 U.S.C. §§ 2601(b)(2), 2612(a)(1)(d); see also Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 225 (3d Cir. 2000). Two distinct causes of action may arise under the FMLA: (1) an "interference" claim, alleging that the employer interfered with or denied an employee's FMLA rights,[4] and (2) a "retaliation" claim, alleging that the employer took an adverse employment action against the employee in retaliation for exercising a right under

---

[4] FMLA interference claims are derived from 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." To succeed on an interference claim, a plaintiff must demonstrate that he or she was entitled to and denied some benefit under the FMLA. See Bearley v. Friendly, 322 F. Supp. 2d 563, 570-71 (M.D. Pa. 2004). Because interference actions are not founded on discrimination, the plaintiff need not establish that he or she was treated differently than other employees to bring a successful interference claim. Callison v. City of Phila., 430 F.3d 117, 119-20 (3d Cir. 2005). Similarly, the plaintiff's employer "cannot justify its actions by establishing a legitimate business purpose for its decision." Id.

the FMLA.[5]  See Bearley v. Friendly, 322 F. Supp. 2d 563, 570-71 (M.D. Pa. 2004);

Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478 (D.N.J. 2002).

In the action *sub judice*, Erdman asserts both interference and retaliation

claims.  To advance either claim, Erdman must first establish that she was eligible

to request FMLA leave.  An "eligible employee" is an employee who:  (1) has been

employed by the same employer for at least twelve months, and (2) has provided "at

least 1,250 hours of service" to his or her employer during the twelve-month period

immediately preceding the commencement of his or her FMLA leave.  29 U.S.C.

§ 2611(2)(A)(ii).  In the instant case, the first eligibility requirement is clearly

established by Erdman's two decades of employment with Nationwide.  (Doc. 15 ¶ 6;

Doc. 18 ¶ 7.)  However, Nationwide contends that the second eligibility requirement

has not been met because Erdman worked only 1,179.75 hours in the twelve-month

---

[5]  FMLA retaliation claims arise under 29 U.S.C. § 2615(a)(2), which makes it
"unlawful for any employer to discharge . . . any individual for opposing any
practice made unlawful by [the FMLA]."  Id.; see Victorelli v. Shadyside Hosp., 128
F.3d 184, 190 (3d Cir. 1997).  To assert a retaliation claim, a plaintiff must
demonstrate that:  (1) he or she is protected under the FMLA, (2) he or she suffered
an adverse employment action, and (3) the adverse action was causally related to
the plaintiff's exercise of his or her FMLA rights.  Conoshenti, 364 F.3d at 146; see
also Walters v. A&P Supermarket Serv., No. 3:98-CV-1222, 2001 WL 114385, at *3
(M.D. Pa. Jan. 31, 2001).  If the plaintiff establishes such evidence, the burden shifts
to the employer to demonstrate a legitimate, nondiscriminatory reason for the
adverse action.  Conoshenti, 364 F.3d at 147 (citing Fakete v. Aetna, Inc., 308 F.3d
335, 338 (3d Cir. 2002)).  Thereafter, the burden shifts back to the plaintiff who must
demonstrate that the employer's proffered reason is pretextual.  See Bearley, 322 F.
Supp. 2d at 571-73; see also Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478,
487 (D.N.J. 2002).

period immediately preceding the scheduled commencement of her leave.[6]  (See

Doc. 43 at 11; Doc. 63 at 6 n.2.)  Erdman counters that Nationwide's calculation is

erroneous because it does not include 118.5 additional hours[7] that she worked from

her home "on behalf of Nationwide, for which she was not paid, but for which she

kept reliable records for her use of comp time and during which she unquestionably

furthered the interests of her employer, Nationwide."[8]  (See Doc. 61 at 15; Doc. 40-5

at 17-18.)

　　　To resolve this dispute, the court must examine the contours of the term

"hours of service" as contained in the FMLA.  While the FMLA does not expressly

define "hours of service," the Act directs the court to calculate hours of service

---

[6] Because Erdman's employment was terminated before her leave was
scheduled to begin, Nationwide's calculation includes "projected hours" for the
period between her termination on May 9, 2003 and the commencement of her
leave on July 7, 2003.  (Doc. 43 at 11.)  Including these projected hours, Nationwide's
original calculation was 1,162.625 hours.  (Id.)  As the court is required to view the
evidence in the light most favorable to Erdman, the court will consider her slightly-
higher projection of 1,179.75 hours for purposes of the instant motion.  (Doc. 40-5 at
18.)

[7] Erdman's calculation of her number of hours worked from home is 222
hours.  (Doc. 40-5 at 17.)  However, her deposition testimony revealed that this
calculation included an erroneous entry of 105 hours, rather than 1.5 hours, for the
week of December 7, 2002.  (Doc. 40-3 at 27.)  Accordingly, the court will use the
corrected figure of 118.5 hours for purposes of analysis.

[8] Erdman recorded these additional hours on a personal calendar.  (See
Doc. 40-5 at 21-32.)  Nationwide contends that Erdman's calendar and other
documents tabulating her additional hours should not be admitted because they are
hearsay.  (See Docs. 76, 77.)  Given the court's conclusion that Erdman's FMLA
claims fail despite the evidence contained in the disputed documents, the court
need not reach the antecedent issue of the documents' admissibility.  See infra.

"according to the principles established under the Fair Labor Standards Act (FLSA) for determining compensable hours of work."  29 C.F.R. § 825.110(c); see also 29 U.S.C. § 2611(2)(C); Koontz v. USX Corp., No. 99-3191, 2001 WL 752656, at *7 (E.D. Pa. July 2, 2001).  Whether a given set of facts meets the FLSA's definition of hours of work is a question of law.  See Chao v. Tradesmen Int'l, Inc., 310 F.3d 904, 908 (6th Cir. 2002); see also Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 807 (11th Cir. 1992) (citing Bright v. Houston Nw. Med. Ctr. Survivor, Inc., 934 F.2d 671 (5th Cir. 1991)).

The FLSA and its regulations generally define the term "hours of work" as "all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place."  29 C.F.R. § 785.7 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)); see also Beaston v. Scot. Sch. for Veterans' Children, 693 F. Supp. 234, 236 (M.D. Pa. 1988).  Work performed away from the employer's premises may also qualify as hours of work if "the employer knows or has reason to believe that the work is being performed."  29 C.F.R. § 785.12.  In the instant case, Erdman alleges that she completed the 118.5 disputed hours from her home.  Therefore, the dispositive issue is whether Nationwide knew or had reason to believe that Erdman was performing the disputed work.  See Bull v. United States, 68 Fed. Cl. 212, 224 (2005) (stating that "the Circuit Courts of Appeals have uniformly adopted the knowledge requirement" for purposes of FLSA analysis); see also Holzapfel v. Town of Newburgh, N.Y., 145 F.3d 516, 524 (2d Cir. 1998) (finding that proof of an employer's

actual or constructive knowledge of an employee's off-duty activities was required before such activities could constitute hours worked under the FLSA); <u>Davis v. Food Lion</u>, 792 F.2d 1274, 1276-77 (4th Cir. 1988) (same).

After a thorough review of the record in the instant case, the court finds no evidence to suggest that Nationwide knew or had reason to know that Erdman had worked the disputed hours.  In fact, Erdman acknowledges that she neither reported the disputed hours on her time sheets nor requested compensation for the disputed hours.  (Doc. 40-3 at 18, 27; Doc. 40-2 at 44); <u>see</u> <u>White v. Wash. Gas</u>, No. Civ.A. 2003-2618, 2005 WL 544733, at *5 (D. Md. Mar. 4, 2005) (granting summary judgment in favor of employer where employee never reported alleged overtime hours on his time sheets or requested compensation for such hours).

Nevertheless, Erdman argues that her supervisor for the relevant time period, Getgen, had knowledge of her practice of working additional hours and that such knowledge should be imputed to Nationwide.  Beginning as early as 1993, Erdman's former supervisor, Sarno, had been aware that Erdman occasionally worked extra hours beyond her allotted twenty-five per week. (Doc. 50-2 at 24, 71; Doc. 40-2 at 36.)  In fact, Sarno had approved compensation for some of these additional hours in the past, but only when Erdman included the hours on her time sheet. (Doc. 50 at 39-40.)  Then, in January of 2002, Erdman's employment status changed, and Sarno allegedly informed Erdman that she was no longer permitted to work extra hours.  (<u>Id.</u> at 75-76.)

Three months later, on April 22, 2002, Getgen replaced Sarno as Erdman's supervisor.  Getgen testified that she was told by Sarno that Erdman was prohibited from working additional hours and that Erdman understood the same.  (Doc. 47-3 at 39.)  For nearly five months thereafter, the record is devoid of any communications between Getgen and Erdman regarding Erdman's alleged habit of working extra hours.  Then, on September 6, 2002, Erdman sent Getgen the following email:

> In the past, [Sarno] did allow me to work extra time and keep it as comp time to use when the kids were off.  Will I be allowed to do that now?  Please let me know what is possible with these issues so I can look at what options I have for the future.

(Doc. 47-4 at 70-71.)  Whether Getgen granted or denied Erdman's request remains in dispute.  (Compare Doc. 47-3 at 19, with Doc. 40-2 at 45.)  Nevertheless, even viewing this evidence in the light most favorable to Erdman, the court finds that the earliest date on which a reasonable jury could conclude that Getgen knew or had reason to know of Erdman's practice of working additional hours was September 6, 2002.

Getgen's views on additional work hours was clarified in an email dated January 28, 2003, wherein Getgen told Erdman that she was "not authorized to work outside [her] standard work hours."  (Doc. 40-5 at 12.)  After giving Erdman a clear mandate not to work additional hours, Getgen certainly had no reason to believe that Erdman would continue to do so.  Summerfield v. Perfect Photo, No. 81-3017, 1983 U.S. Dist. LEXIS 16203, *16 (E.D. Pa. June 17, 1983) (stating that employee failed to establish that employer knew or had reason to know of his

11

additional work where such work was "against the express terms of Plaintiff's employment").  Removing all hours worked prior to September 6, 2002 and after January 28, 2003, the time period for which the court finds that Getgen and Nationwide did not know or have reason to know of Erdman's additional hours, reduces the disputed hours to 41.5.  (See Doc. 40-5 at 17-18.)  Combining this amount with Erdman's reported working hours of 1,179.75 yields a total of 1,221.25 hours.  Accordingly, the court finds that a reasonable jury could not conclude that Erdman worked the requisite 1,250 hours to qualify as an eligible employee for purposes of the FMLA.

Nevertheless, Erdman contends that she should be deemed an eligible employee because Nationwide failed to affirmatively notify her of her ineligibility. See 29 C.F.R. § 825.110(d) ("If the employer fails to advise the employee whether the employee is eligible prior to the date the requested leave is to commence, the employee will be deemed eligible.").  This argument is unavailing because the FMLA regulation creating the employer notification requirement has been repeatedly discredited.  While the Third Circuit Court of Appeals has yet to address the validity of the cited regulation, the court is persuaded by the reasoning of our sister court in the Eastern District of Pennsylvania, which rejected the regulation as contradictory of the FMLA's express statutory definition of an eligible employee. See Boyd v. City of Phila., No. 06-1524, 2007 WL 925908, at *2 (E.D. Pa. Mar. 22, 2007); see also Woodford v. Cmty. Action of Greene County, Inc., 268 F.3d 51, 57 (2d Cir. 2001) ("The regulation exceeds agency rulemaking powers by making eligible

12

under the FMLA employees who do not meet the statute's clear eligibility requirements."); <u>Brungart v. Bell South Telecomms., Inc.</u>, 231 F.3d 791, 796-97 (11th Cir. 2000) ("There is no ambiguity in the statute concerning eligibility for family medical leave, no gap to be filled."); <u>Dormeyer v. Commerica Bank-Ill.</u>, 223 F.3d 579, 582 (7th Cir. 2000) ("The statutory text is perfectly clear and covers the issue.  The right of family leave is conferred only on employees who have worked at least 1,250 hours in the previous 12 months.").  Accordingly, the employer notification regulation cannot transform Erdman from an ineligible employee into an eligible one, and the court will grant Nationwide's motion for summary judgment with respect to Erdman's claims under the FMLA.

## B.   <u>ADA</u>

The ADA prohibits employment discrimination against "qualified individual[s] with a disability."  42 U.S.C. § 12112(a); <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 380 (3d Cir. 2002); <u>Marinelli v. City of Erie</u>, 216 F.3d 354, 359 (3d Cir. 2000).  A person is considered disabled under the ADA if he or she:  (1) has a physical or mental impairment that substantially limits one or more of his or her major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2); <u>Marinelli</u>, 216 F.3d at 359.  In the instant case, Erdman concedes that she does not meet the ADA definition of disabled.  Nevertheless, she contends that Nationwide violated the ADA when it failed "to reasonably accommodate [her] needs due to her disabled child."  (Doc. 15 ¶ 28.)

Essentially, Erdman is asserting a claim under the ADA's "association provision," which prohibits an employer from "excluding or otherwise denying equal jobs or benefits to" an individual based upon the individual's relationship or association with a disabled person.  42 U.S.C. § 12112(b)(4); see also Doe v. County of Centre, 60 F. Supp. 2d 417, 427 (M.D. Pa. 1999) (explaining public policy basis for association provision).  The ADA's association provision prohibits employers from making employment decisions "based on the belief that the employee would have to miss work in order to take care of a disabled person."  Kennedy v. Chubb Group of Ins. Cos., 60 F. Supp. 2d 384, 396 n.7 (D.N.J. 1999) (citing Tyndall v. Nat'l Educ. Ctrs., 31 F.3d 209, 214 (4th Cir. 1994)); see also Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 408 (E.D. Pa. 1998); 29 C.F.R. Pt. 1630, App.  To establish a *prima facie* case of association discrimination, a plaintiff must prove the following:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
> (2) the plaintiff was subjected to adverse employment action;
> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997); see also Reddinger, 4 F. Supp. 2d at 409.  If the plaintiff can establish these four elements, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action.  Once such a reason is proffered, the burden shifts back to the plaintiff to prove that the employer's stated reason is pretextual.

14

Den Hartog, 129 F.3d at 1085 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973)).

Here, Nationwide disputes only Erdman's ability to establish the fourth element of the *prima facie* case, namely, the existence of a reasonable inference that Nationwide terminated Erdman's employment because of a belief that she would be required to miss work in order to care for her disabled daughter.  (See Doc. 43 at 13.)  Timing can be used to infer a causal connection between a plaintiff's protected activity and his or her employer's adverse action, although this requires consideration "with a careful eye to the specific facts and circumstances encountered."  See Parker, 234 F. Supp. at 492 n.15 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000)).

In the instant case, Erdman was terminated on May 9, 2003, the very day on which she had asked to be notified of Nationwide's decision regarding her FMLA leave.  In addition, just two months earlier, Nationwide required Erdman to accept a full-time position, effectively revoking the part-time position that she had filled for five years.  The court finds that this evidence could suggest to a reasonable jury that Nationwide harbored a certain degree of antagonism towards modified work schedules of the type required by Erdman to care for her disabled daughter.  On the other hand, Erdman's termination occurred only one day after Getgen intercepted an unprofessional telephone conversation in which Erdman had allegedly engaged. Furthermore, Erdman was allegedly involved in a number of incidents of inappropriate workplace behavior and insubordination in the months leading up to

15

her termination.  Nevertheless, the court finds that the aforementioned evidence, when considered in the light most favorable to Erdman, would permit a reasonable jury to find that Nationwide terminated Erdman's employment because of a belief that she would be required to miss work in order to care for her disabled daughter. As such, Nationwide's motion for summary judgment on Erdman's claim of association discrimination will be denied.

Erdman arguably asserts a second ADA claim based upon Nationwide's failure to provide her with a reasonable accommodation in the form of a modified work schedule.  However, the ADA's association provision "does not mandate that an employer provide an employee without a disability with a reasonable accommodation to enable the employee to care for a disabled individual with whom the employee is associated."  See Kennedy, 60 F. Supp. 2d at 396 (citing Den Hartog, 129 F.3d at 1084-85 and Tyndall, 31 F.3d 209 at 214); see also 29 C.F.R. Pt. 1630, App. ("It should be noted, however, that an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities.").  To the extent that Erdman's claim is based upon a failure to accommodate theory, Nationwide's motion for summary judgment will be granted.

## C.    **PHRA**

The PHRA makes it unlawful for an employer to terminate an individual's employment because of a "non-job related handicap or disability."  43 P.S. § 955. Generally, PHRA disability claims are analyzed under the same legal standards set

forth under the ADA.  See Rinehimer, 292 F.3d at 382; Salley v. Circuit City Stores, Inc., 160 F.3d 977, 979 n.1 (3d Cir. 1998).  However, the PHRA does not contain an explicit association discrimination provision.  Compare 42 U.S.C. § 12112(b)(4), with 43 P.S. § 955.  Erdman offers no authority for the proposition that the PHRA should be extended to include an association discrimination cause of action, and the court finds none.  Had the Pennsylvania legislature desired to include such a provision, it could have done so by modifying the text of the PHRA in light of Section 12112(b)(4) of the ADA.  Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n, 914 A.2d 477, 481 (Pa. Commw. Ct. 2007) (concluding that a statute's failure to include an express provision implied that such a provision was not intended by the legislature).  Finding no evidence to suggest that an association discrimination claim is viable in Pennsylvania, the court concludes that Erdman's PHRA claim fails to the extent that it is based upon such a theory, and the court will grant Nationwide's motion for summary judgment in this respect.

Nevertheless, Erdman contends that her PHRA claim should survive summary judgment based upon a retaliation theory.  To establish a *prima facie* case of retaliation under the PHRA, an employee must demonstrate that:  (1) he or she "engaged in a protected activity;" (2) he or she "was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity," and (3) "there was a causal connection between the protected activity and the adverse action."  Foster v. JLG Indus., Inc., 199 F. App'x 90, 94 (3d Cir. 2006).

Nationwide contends that Erdman has offered no evidence that her request

for FMLA leave constituted a protected activity within the meaning of the PHRA.

The issue appears to be one of first impression in Pennsylvania.  Accordingly, it is

appropriate for the court "to look to federal decisions involving similar federal

statutes for guidance."  City of Pittsburgh Comm'n on Human Relations v.

DeFelice, 782 A.2d 586, 592 n.8 (Pa. Commw. Ct. 2001).  Federal courts have

repeatedly held that requests for FMLA leave constitute protected activities.  See,

e.g., Bell v. Mericle Dev. Corp., No. 3:CV-05-1134, 2007 WL 431888, at *17 (M.D. Pa.

Feb. 5, 2007) (finding a request for FMLA leave sufficient to satisfy protected

activity requirement).  In fact, subjecting an employee to adverse action because of

a request for FMLA gives rise to an independent cause of action under federal law.

See supra note 5.  Given the protected status of requests for FMLA leave under

federal law, the court predicts that the Pennsylvania Supreme Court would find

that such requests satisfy the protected activity requirement set forth in the PHRA.

Accordingly, Erdman's PHRA claim will survive summary judgment to the extent

that it is based upon a retaliation theory, and Nationwide's motion will be denied in

this respect.

### D.   Breach of Contract

Erdman contends that Nationwide breached their contract as contained in

the employee handbook when it refused to grant Erdman a leave of absence and

subsequently terminated her employment.  (Doc. 15 ¶ 34.)  Erdman identifies a

number of handbook provisions that were allegedly breached, including paragraph

7.4 regarding an unpaid "leave of absence," paragraph 7.6 regarding "permission

absences," and paragraph 7.12 regarding FMLA leave.  (Doc. 43 at 21 n.3; see also

Doc. 44-3 at 9-22.)

Absent a clear intent to the contrary, all employment relationships in

Pennsylvania are considered employment-at-will, meaning that an employer can

discharge an employee at any time for any reason.  Preobrazhenskaya v. Mercy Hall

Infirmary, 71 F. App'x 936, 940 (3d Cir. 2003).  For an employee handbook to carve

an exception to the at-will doctrine, the handbook "must contain a clear indication

that the employer intends to overcome the at-will presumption."  Raines v.

Haverford Coll., 849 F. Supp. 1009, 1012 (E.D. Pa. 1994) (citing Ruzicki v. Catholic

Cemeteries, Inc., 610 A.2d 495, 497 (Pa. Super. Ct. 1992)); see also Vilchock v.

Procter & Gamble Paper Prods. Co., 868 F. Supp. 659, 667 (M.D. Pa. 1993)

(Conaboy, J.).  "[I]t is for the court to determine whether the handbook contains any

provisions indicating such an intent by the employer."  Raines, 849 F. Supp. at 1012;

see also Schoch v. First Fid. Bancorp., 912 F.2d 654, 660 (3d Cir. 1990) ("Whether

the evidence is sufficient to overcome the at-will presumption is a question of

interpretation normally left to the court.")

Pennsylvania courts have repeatedly held that handbook provisions that

"contain disclaimers or state that there is no intent to create an employment

contract are sufficient to retain the at-will presumption."  Raines, 849 F. Supp. at

1012.  For example, in Ruzicki, the Pennsylvania Superior Court held that a

handbook disclaimer stating that the handbook "is not intended to give rise to any

contractual obligations or to establish an exception to the employment at-will

19

doctrine" was adequate to preserve the at-will presumption.  610 A.2d at 496.

Likewise, in Vilchock, this court held that the following disclaimer was acceptable

to save the at-will presumption:  "This handbook does not create, nor should it be

construed to create a contract with the Company, and any such implications are

expressly denied."  868 F. Supp. at 667.

> In the instant case, Nationwide's handbook clearly states:
>
> The plans [contained in the handbook] do not guarantee employment.  The plans are not conditions of employment, do not constitute consideration for employment, nor do they imply, create or constitute an employment contract. [Nationwide] has an employment-at-will relationship with its employees. This means that each employee and each company has the right to terminate employment at any time, with or without reason, and nothing in the plans is designed or intended to change such relationship.

(Doc. 44-3 at 8.)  This provision combines elements of the disclaimers in Ruzicki and

Vilchock, stating both that the handbook is not intended to alter the at-will

employment relationship and that the handbook is not to be construed as a

contract.  The court finds that the provision is clearly sufficient to retain the

presumption of at-will employment and that the handbook did not create an

express employment contract.  Accordingly, Erdman's breach of contract claim

must fail, and the court will grant summary judgment in favor of Nationwide on this

claim.

## IV.   Conclusion

Because a reasonable jury could not find that Erdman was a qualified

employee under the FMLA, Nationwide's motion for summary judgment (Doc. 42)

will be granted with respect to these claims.  Summary judgment will also be

granted in favor of Nationwide on Erdman's claims of failure to provide reasonable

accommodation pursuant to the ADA, association discrimination pursuant to the

PHRA, and breach of an employment contract.   Nationwide's motion for summary

judgment will be denied in all other respects.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       June 12, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENDA L. ERDMAN,** | : | **CIVIL ACTION NO. 1:05-CV-0944** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONWIDE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 12th day of June, 2007, upon consideration of defendant's

motion for summary judgment (Doc. 42), defendant's motion to dismiss (Doc. 16),

and defendant's motion in limine to exclude plaintiff's evidence of unreported extra

hours worked (Doc. 76), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.   Defendant's motion for summary judgment (Doc. 42) is GRANTED in
     part and DENIED in part as follows:

     a.   Defendant's motion for summary judgment is GRANTED with
          respect to plaintiff's claims of interference and retaliation
          pursuant to the Family Medical Leave Act, failure to provide
          reasonable accommodation pursuant to the Americans with
          Disabilities Act, association discrimination pursuant to the
          Pennsylvania Human Relations Act, and breach of contract.

     b.   Defendant's motion for summary judgment is DENIED in all
          other respects.

2.   Defendant's motion to dismiss (Doc. 16) is DENIED as moot.

3.      Defendant's motion in limine to exclude plaintiff's evidence of
        unreported extra hours worked (Doc. 76) is DENIED as moot.

4.      A revised pretrial and trial schedule shall issue by future order of
        court.


        S/ Christopher C. Conner
        CHRISTOPHER C. CONNER
        United States District Judge