## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA L. ERDMAN,** | : | **CIVIL ACTION NO. 1:05-CV-0944** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONWIDE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court is a motion by defendant Nationwide Insurance Company ("Nationwide") for partial reconsideration of a memorandum and order denying summary judgment in its favor on two of the claims asserted by plaintiff Brenda L. Erdman ("Erdman").  See Erdman v. Nationwide Ins. Co., No. 05-944, 2007 WL 1704648 (M.D. Pa. June 12, 2007).  Nationwide contends that three aspects of the court's memorandum should be reconsidered:  (1) the court's conclusion that Erdman proffered sufficient evidence to support a claim of association discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, (2) the court's ruling that Erdman's amended complaint sufficiently pled a claim of retaliation pursuant to the Pennsylvania Human Relations Act ("PHRA"), PA. STAT. ANN. tit. 43, §§ 951-963, and (3) the court's finding that Erdman's request for leave under the Family and Medical Leave Act ("FMLA") was a "protected activity" that could support a claim of retaliation pursuant to the PHRA.

The parties have fully briefed the issues, and the court heard oral argument on August 9, 2007.  The motion is now ripe for disposition.  For the reasons that follow, the court will grant Nationwide's motion in part.

I.    **Summary of Facts**[1]

The dispute in the instant case centers around Nationwide's decision to terminate Erdman's employment.  While Erdman was employed at Nationwide, she gave birth to a disabled daughter.  (Doc. 15 ¶ 7; Doc. 18 ¶ 8.)  Erdman was twice granted modifications to her work schedule "due to the needs of her disabled child."  (Doc. 15 ¶¶ 8-9; Doc. 18 ¶¶ 9-10.)  Then, on March 12, 2003, Erdman's supervisors informed her that Nationwide was revoking her modified work schedule and that her job would be eliminated unless she agreed to accept a full-time position.  (Doc. 15 ¶ 13; Doc. 18 ¶ 14.)  Erdman accepted the full-time position, but "sought confirmation that she would be able to use her previously scheduled vacation in August 2003, to care [for] and supervise her 10-year-old daughter."  (Doc. 44 ¶¶ 7, 10; Doc. 60 ¶¶ 7, 10.)  One of Erdman's supervisors informed her that it was "unlikely" that Nationwide would permit her to take the requested vacation.  (Doc. 44 ¶ 8; Doc. 60 ¶ 8.)  Erdman responded that she would seek leave under the FMLA if her previous vacation request was not approved.  (Doc. 44 ¶ 9; Doc. 60 ¶ 9.)  To solidify her request for leave, Erdman submitted FMLA paperwork to

---

[1] A more extensive discussion of the facts of this case is presented in the memorandum and order dated June 12, 2007 (Doc. 85), familiarity with which is presumed.

Nationwide on April 22, 2003, seeking a period of leave that was to commence on July 7, 2003.  (Doc. 15 ¶ 14; Doc. 18 ¶ 15; Doc. 44 ¶ 30; Doc. 60 ¶ 30.)  On May 6, 2003, Erdman requested Nationwide's decision regarding her FMLA leave by May 9, 2003. (Doc. 15 ¶ 15; Doc. 18 ¶ 16.)

Nationwide terminated Erdman's employment on May 9, 2003.  (Doc. 15 ¶ 16; Doc. 18 ¶ 17.)  Nationwide contends that Erdman's employment was terminated because she engaged in "multiple incidents of inappropriate workplace behavior." (Doc. 43 at 6.)  Erdman denies these allegations and counters that her termination was the culmination of "a focused and insidious campaign by her supervisor and other Nationwide managers . . . to develop pre-textual bases upon which to fire her to prevent her from taking FMLA leave."  (Doc. 61 at 6; Doc. 60 ¶¶ 11, 23, 26.) Erdman commenced the instant action, asserting claims pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, the ADA, and the PHRA, as well as a claim of breach of an employment contract.  Only Erdman's ADA and PHRA claims remain.

## II.   <u>Standard of Review</u>

Motions for reconsideration under Federal Rule of Civil Procedure 59(e) serve primarily to correct analytical errors in a prior decision of the court.  <u>See</u> Fed. R. Civ. P. 59(e); <u>United States v. Fiorelli</u>, 337 F.3d 282, 287-88 (3d Cir. 2003).  They may not be used as a device for introducing new evidence or claims not previously presented.  <u>See</u> <u>id.</u>  Such motions require the court to reconstruct the record as it existed at the time of the prior decision to determine whether the court committed

an error of law material to the ruling.  Id.; see also Smith v. Evans, 853 F.2d 155, 158-59 (3d Cir. 1988).

It follows from this remedial purpose that the standard of review for a motion for reconsideration relates back to the standard applicable in the underlying decision.  Fiorelli, 337 F.3d at 287-88; Pittsburgh Terminal Corp. v. Balt. & Ohio R.R., 824 F.2d 249, 253 (3d Cir. 1987).  When a reconsideration motion challenges the court's decision to grant or deny summary judgment, Federal Rule of Civil Procedure 56 controls the analysis.  Relief may be granted if the materials presented in support of and in opposition to the summary judgment motion—including the pleadings, discovery materials, and affidavits—"show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  The court should not weigh conflicting evidence or make factual findings but, rather, should "consider all evidence in the light most favorable to the non-moving party" to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Schnall v. Amboy Nat'l Bank, 279 F.3d 205, 209 (3d Cir. 2002).

## III.   Discussion

Nationwide asks the court to reconsider its decision to deny summary judgment on Erdman's claims pursuant to the ADA and the PHRA.  The court will address these claims *seriatim.*

4

## A.   ADA

Erdman's ADA claim is asserted pursuant to the "association provision,"
which prohibits an employer from "excluding or otherwise denying equal jobs or
benefits to" an individual based upon the individual's relationship or association
with a disabled person.  42 U.S.C. § 12112(b)(4).  To establish a *prima facie* case of
association discrimination, a plaintiff must prove the following:

(1)   the plaintiff was "qualified" for the job at the time of the adverse
employment action;

(2)   the plaintiff was subjected to adverse employment action;

(3)   the plaintiff was known by his employer at the time to have a relative
or associate with a disability;

(4)   the adverse employment action occurred under circumstances raising
a reasonable inference that the disability of the relative or associate
was a determining factor in the employer's decision.

Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997); see also

Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998).

In the instant case, Nationwide disputes only Erdman's ability to establish
the fourth element of the *prima facie* case, to wit:  the existence of a reasonable
inference that Nationwide terminated Erdman's employment because of a belief
that she would be required to miss work in order to care for her disabled daughter.
(See Doc. 43 at 13.)  In the memorandum and order dated June 12, 2007 (Doc. 85),
the court held that Erdman had presented sufficient evidence from which a
reasonable jury could conclude that this element has been established.  In so
finding, the court noted the following:

In the instant case, Erdman was terminated on May 9, 2003, the very day on which she had asked to be notified of Nationwide's decision regarding her FMLA leave. In addition, just two months earlier, Nationwide required Erdman to accept a full-time position, effectively revoking the part-time position that she had filled for five years. The court finds that this evidence could suggest to a reasonable jury that Nationwide harbored a certain degree of antagonism towards modified work schedules of the type required by Erdman to care for her disabled daughter. . . . [T]he court finds that the aforementioned evidence, when considered in the light most favorable to Erdman, would permit a reasonable jury to find that Nationwide terminated Erdman's employment because of a belief that she would be required to miss work in order to care for her disabled daughter.

(Doc. 85 at 15.)

Nationwide now argues that this decision effectively allows Erdman to pursue a reasonable accommodation claim, a theory of liability which is not permitted by the association provision. (See Doc. 88 at 10.) The court disagrees. Nothing about the court's prior opinion suggested that Nationwide was required to grant Erdman's request for leave to avoid running afoul of the association provision. In fact, the court's prior opinion recognized that the association provision "does not mandate that an employer provide an employee without a disability with a reasonable accommodation to enable the employee to care for a disabled individual with whom the employee is associated." (Doc. 85 at 16.) Instead, the court's prior opinion concluded only that the circumstances surrounding Nationwide's decision to terminate Erdman's employment raised a reasonable inference that her daughter's disability was a determining factor in Nationwide's decision. (Id. at 15-16.)

Nationwide now suggests that even if such an inference exists, Erdman's termination does not violate the association provision because her history of requests for modified work schedules and for leave made her termination permissible.[2]  There is a dearth of case law interpreting this aspect of the association provision, and Third Circuit case law on the subject is particularly limited.  The court looks for guidance to the association provision's supporting regulations, which define the scope of the provision as follows:

------

[2]  The court notes that Nationwide is asserting this argument for the first time in the context of the instant motion.  Nationwide's documents in support of the motion for summary judgment argued only that Erdman's employment was terminated because she engaged in inappropriate workplace behavior and not because of her daughter's disability.  (See, e.g., Doc. 43 at 18.)  Accordingly, with respect to the ADA claim, the court finds that Nationwide's motion is more appropriately considered a renewed motion for summary judgment than a motion for reconsideration.  See United States v. Fiorelli, 337 F.3d 282, 287-88 (3d Cir. 2003) (stating that reconsideration motions should not be used to introduce new claims not previously presented); see also supra Part II.  The court advised the parties of this fact during the oral argument on the motion and permitted the parties to supplement the record evidence in light of the court's treatment of the motion.  (See Doc. 97 at 2, 29-30.)  The court notes, however, that its construction of the motion does not materially alter the standard of review.  The standard of review for a motion for reconsideration relates back to the standard utilized in the underlying decision.  See supra Part II.  Because the underlying decision in the instant case dealt with a summary judgment motion, both a motion for reconsideration and a renewed motion for summary judgment are properly evaluated using the summary judgment standard set forth in Federal Rule of Civil Procedure 56(c).

> [A]ssume that a qualified applicant without a disability applies for a job and discloses to the employer that his or her spouse has a disability. The employer thereupon declines to hire the applicant because the employer believes that the applicant would have to miss work or frequently leave work early in order to care for the spouse. Such a refusal to hire would be prohibited by this provision. Similarly, this provision would prohibit an employer from discharging an employee because the employee does volunteer work with people who have AIDS, and the employer fears that the employee may contract the disease.

29 C.F.R. Pt. 1630, App. As illustrated by these regulations, the association provision is "targeted at prohibiting unfounded stereotypes and assumptions against employees who associate with disabled people." Den Hartog, 909 F. Supp. at 1400; see also Rocky v. Columbia Lawnwood Reg'l Med. Ctr., 54 F. Supp. 2d 1159, 1165 (S.D. Fla. 1999).

In Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir. 1994), the Court of Appeals for the Fourth Circuit addressed the issue of whether an employer had violated the association provision by discharging an employee who was frequently absent due to the disability of a family member. Id. at 211-12. The Tyndall court recognized that an employer may not make employment decisions based on the belief that an employee would have to miss work in order to care for a disabled family member. See id.; see also 29 C.F.R. Pt. 1630, App. However, the Tyndall court concluded that the employer's actions were properly based upon an established record of the employee's absences and her statement that she would require additional leave time to care for a disabled family member, rather than on "an unfounded assumption" regarding her need for future absences. Id. at 214.

8

Likewise, our sister court in the Eastern District of Pennsylvania has stated, "[I]f an employee's termination is not based on any assumption regarding future absences related to their relative's care but is instead the result of a record of past absences and/or clear indication that additional time off will be needed in the future, no ADA violation has occurred." Reddinger, 4 F. Supp. 2d at 409; see also Pittman v. Moselfy, Warren, Prichard & Parrish, No. 01-279, 2002 WL 2007880, at *6 (M.D. Fla. July 29, 2002) ("[A]n employer's decision to terminate an employee based on an established record of absences to care for a disabled person and a clear indication that additional time off is needed for the same purpose does not violate the "association" provision of the ADA.").[3]

Therefore, the dispositive question presented by the instant motion is whether Nationwide's decision to terminate Erdman's employment was based upon a record of past absences or upon "an unfounded assumption" regarding her need for future absences. Tyndall, 31 F.3d at 214; see also Overley v. Covenant Transport, Inc., 178 F. App'x 488, 493 (6th Cir. 2006) ("Courts have surmised that an employee would be protected under the statute if . . . the employer's decision was based solely on an unsubstantiated belief that the employee would have to miss

---

[3] Erdman attempts to distinguish Tyndall and Pittman, observing that both cases held that the plaintiffs were not qualified employees within the meaning of the ADA because they could not meet the attendance requirements of their jobs. (Doc. 99 at 2); see also Tyndall, 31 F.3d at 212-14; Pittman, 2002 WL 2007880, at *4-5. While this observation is factually correct, it is incomplete. Both cases also held that *even if* the plaintiffs had been qualified employees, the facts alleged were insufficient to establish a reasonable inference that they had been discriminated against based on the disability of an associate, which is the precise issue at hand in the instant case. See Tyndall, 31 F.3d at 214-15; Pittman, 2002 WL 2007880, at *6-7.

9

work because of the association.").  In the instant matter, Erdman was twice

granted modifications to her work schedule "due to the needs of her disabled child"

before requesting the disputed FMLA leave "to care [for] and supervise her 10-year-

old daughter."  (Doc. 15 ¶¶ 8-9; Doc. 18 ¶¶ 9-10; Doc. 44 ¶¶ 7, 10; Doc. 60 ¶¶ 7, 10.)

There is simply no evidence of record to suggest that Nationwide's decision to

terminate Erdman's employment was based not upon this history of leave requests

but upon an unfounded assumption that Erdman would continue to require leave in

the future.[4]  Accordingly, a reasonable jury could not conclude that Nationwide's

decision to terminate Erdman's employment was based upon an unfounded

assumption regarding her need for future absences from work.[5]

---

[4] When asked to provide evidence of unfounded assumptions made by
Nationwide, Erdman suggested that Nationwide improperly assumed that she:
(1) "could not fulfill Nationwide's work expectations," and (2) "was lying about the
reason for her request for leave."  (Doc. 99 at 4.)  Neither of these is the type of
unfounded assumption against "employees who associate with disabled people"
that the association provision was designed to guard against.  Den Hartog, 909 F.
Supp. at 1400.

[5] The court notes that its decision does not foreclose the possibility that
another plaintiff could assert a successful claim of association discrimination with
slightly modified facts.  If, for example, Erdman had not required a reduced work
schedule because of her disabled daughter before making her FMLA leave request,
the court's decision may have been different.  See Tyndall, 31 F.3d 209 at 214
(concluding that decision to terminate employee was properly based upon an
established record of employee's absences *and* employee's statement that she would
require additional leave time to care for a disabled associate).  But see Reddinger, 4
F. Supp. 2d at 409 (stating that decision to terminate employee may properly be
based upon a "record of past absences *and/or* clear indication that additional time
off will be needed in the future" (emphasis added)) .

The court notes that the Equal Employment Opportunity Commission has suggested a seemingly broader reach of the association provision, to wit: prohibiting employers from "treating an employee differently than other employees because of his or her association with a person with a disability." <u>See</u> Equal Employment Opportunity Commission, Questions and Answers About the Association Provision of the Americans with Disabilities Act (Oct. 17, 2005), www.eeoc.gov/facts/association_ada.html [hereinafter "Questions and Answers"]. To illustrate this principle, the EEOC provides the following example:

> Kyung, an employee at an accounting firm, requests a week of unpaid leave and is told by her supervisor that there will be no difficulty in granting the leave.  Kyung then mentions that she will be using the leave to care for her mother with a disability, who is coming into town for medical treatments.  The supervisor denies the leave request, telling Kyung that the firm's leave policy is not intended to cover this type of situation and that she should hire someone to look after her mother.  A few days later, the supervisor approves Diego's request for a week of unpaid leave to attend a father-son camp with his son.  If the firm grants requests for unpaid leave for certain personal or family reasons, it is a violation of the ADA's association provision to deny Kyung's request because she wishes to use the time to assist her mother with a disability.

<u>Id.</u>  Even considering this interpretation of the association provision, the court finds no evidence of differential treatment in the instant case.  While Erdman has pointed to instances in which she was treated differently than other Nationwide employees, these instances are wholly unrelated to her request for leave.  (<u>See, e.g.</u>, Doc. 99 at 5-6 (discussing Erdman's alleged differential treatment with respect to bonuses, work hours, interviewing, and telephone monitoring)).  The court has parsed the record in the instant case and has found no evidence to suggest that Nationwide

11

granted employee requests for unpaid leave for certain personal or family reasons *but not* for reasons related to the disability of an associate.

Having found no evidence of employment actions based on unfounded assumptions or of differential treatment, the court will grant Nationwide's motion with respect to Erdman's claim of association discrimination pursuant to the ADA.

**B.    PHRA**

Having decided to grant Nationwide's motion with respect to the claim of association discrimination, the only remaining claim is that of retaliation pursuant to state law.  To establish a *prima facie* case of retaliation under the PHRA, an employee must demonstrate that:  (1) he or she "engaged in a protected activity;" (2) he or she "was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity," and (3) "there was a causal connection between the protected activity and the adverse action."  Foster v. JLG Indus., Inc., 199 F. App'x 90, 94 (3d Cir. 2006).

In the instant case, Nationwide contends that Erdman's request for FMLA leave did not constitute a protected activity within the meaning of the PHRA.  The issue appears to be one of first impression in Pennsylvania.  Accordingly, the court believes that deference to the state appellate courts on this issue is appropriate and, therefore, will decline to exercise jurisdiction over plaintiff's PHRA claim.  See 28 U.S.C. § 1367(c)(1) (stating that a court may decline jurisdiction if "the claim raises a novel or complex issue of State law").  The court also notes that the parties have not articulated specific reasons for the court to entertain the PHRA claim in the

12

absence of a federal cause of action.  <u>See</u> 28 U.S.C. § 1367(c) ("The district court[]

may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . .

the district court has dismissed all claims over which it has original jurisdiction.");

<u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the

claim over which the district court has original jurisdiction is dismissed before trial,

the district court *must* decline to decide the pendent state claims unless

considerations of judicial economy, convenience, and fairness to the parties provide

an affirmative justification for doing so.") (emphasis added).

**IV.**   <u>**Conclusion**</u>

For the foregoing reasons, the court will grant Nationwide's motion (Doc. 87)

with respect to Erdman's claim of association discrimination pursuant to the ADA.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        August 22, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRENDA L. ERDMAN,** | : | **CIVIL ACTION NO. 1:05-CV-0944** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NATIONWIDE INSURANCE** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 22nd day of August, 2007, upon consideration of defendant's

motion for reconsideration (Doc. 87), and for the reasons stated in the

accompanying memorandum, it is hereby ORDERED that:

1.  The motion for reconsideration (Doc. 87) is CONSTRUED as a
    renewed motion for summary judgment with respect to plaintiff's
    claim of association discrimination pursuant to the Americans with
    Disabilities Act and is GRANTED as so construed.

2.  The motion for reconsideration (Doc. 87) is otherwise DENIED.

3.  The Clerk of Court is directed to enter JUDGMENT in favor of
    defendant and against plaintiff on all claims arising under federal law.

4.  The Clerk of Court is directed to CLOSE this case.


   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge