# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA L. ERDMAN**, | : | CIVIL ACTION NO. 1:05-CV-0944 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **NATIONWIDE INSURANCE COMPANY**, | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court is a motion by defendant Nationwide Insurance Company ("Nationwide") for summary judgment in its favor on claims asserted by plaintiff Brenda L. Erdman ("Erdman") under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Con. Stat. Ann. 951 *et seq.* This motion comes to the court on remand from the Third Circuit Court of Appeals. For the reasons that follow, the court will deny Nationwide's motion.

## I. Statement of Facts[1] and Procedural History

Erdman began working for Nationwide in 1980. (Doc. 15 ¶ 6; Doc. 18 ¶ 7). During the course of her employment with Nationwide, Erdman gave birth to a disabled daughter. (Doc. 15 ¶ 7; Doc. 18 ¶ 8). On two occasions, Nationwide granted

---

[1] A more extensive discussion of the facts of this case is presented in the memorandum and order dated June 12, 2007 (Doc. 85) and in the opinion of the Third Circuit dated September 23, 2009 (Doc. 106), familiarity with which is presumed.

modifications to Erdman's work schedule, per her request, "due to the needs of her disabled child." (Doc. 15 ¶¶ 8-9; Doc. 18 ¶¶ 9-10). In March of 2003, Nationwide revoked Erdman's modified work schedule, and Erdman's supervisors notified her that Nationwide would eliminate her job, purportedly due to business needs, unless she accepted a full-time position with a standard work schedule. (Doc. 15 ¶ 13; Doc. 18 ¶ 14). Later that month, Erdman agreed to work on a standard full-time schedule, but she "sought confirmation that she would be able to use her previously scheduled vacation in August 2003, to care [for] and supervise her 10-year-old daughter." (Doc. 44 ¶¶ 7, 10; Doc. 60 ¶¶ 7, 10). One of Erdman's supervisors told her that it was "unlikely" that Nationwide would approve her requested vacation. (Doc. 44 ¶ 8; Doc. 60 ¶ 8). Erdman stated that she would seek leave under the FMLA if her request was not approved as vacation. (Doc. 44 ¶ 9; Doc. 60 ¶ 9). Accordingly, on April 22, 2003, Erdman submitted FMLA paperwork to Nationwide in which she sought a period of leave commencing on July 7, 2003. (Doc. 15 ¶ 14; Doc. 18 ¶ 15; Doc. 44 ¶ 30; Doc. 60 ¶ 30). Erdman later asked to be notified of Nationwide's decision regarding her FMLA leave by May 9, 2003. (Doc. 15 ¶ 15; Doc. 18 ¶ 16).

Nationwide fired Erdman on May 9, 2003. (Doc. 15 ¶ 16; Doc. 18 ¶ 17). Nationwide contends that it terminated Erdman's employment because of "multiple incidents of inappropriate workplace behavior." (Doc. 43 at 6). Erdman denies engaging in inappropriate behavior and argues that her termination was the culmination of "a focused and insidious campaign by her supervisor and other Nationwide managers . . . to develop pre-textual bases upon which to fire her to

2

prevent her from taking FMLA leave." (Doc. 61 at 6; Doc. 60 ¶¶ 11, 23, 26). Erdman filed the instant action on May 9, 2005, asserting claims pursuant to the FMLA, the ADA, and the PHRA, as well as a claim of breach of an employment contract. (See Docs. 1, 15). The court granted summary judgment on Erdman's FMLA, ADA, and contract claims.[2] (See Docs. 85, 100). The court concluded, in pertinent part, that Erdman did not work a sufficient number of hours to qualify as an eligible employee under the FMLA. On appeal, the Third Circuit Court of Appeals vacated summary judgment on the FMLA claim; it found that a reasonable jury could conclude that Erdman had accumulated sufficient hours to qualify for FMLA leave. See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 506 (3d Cir. 2009). The court now reconsiders whether defendants are entitled to summary judgment. The parties have fully briefed the issues, which are ripe for decision.

## II. **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence,

---

[2] With no claims under federal law remaining in the case, the court declined to exercise jurisdiction over plaintiff's PHRA claim. (See Doc. 100). Plaintiff preserved her PHRA claim pending appeal of her federal claims by filing a writ of summons with the Dauphin County Court of Common Pleas. After the Third Circuit vacated this court's entry of summary judgment on plaintiff's FMLA claim and remanded the case to this court, plaintiff filed an uncontested motion to remove her PHRA claim to this court, and the court granted the motion. (See Docs. 112, 119).

3

beyond the allegations of the pleadings," in support of its right to relief. <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. <u>Pappas</u>, 331 F. Supp. 2d at 315.

**III. <u>Discussion</u>**

Erdman's remaining claims arise under the FMLA and the PHRA. The court will address these claims *seriatim*.

    **A.**     <u>**FMLA**</u>

The FMLA was enacted to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1). It provides that certain employees may take "reasonable leave for medical reasons," 29 U.S.C. § 2601(b)(2), and for "the care of a child . . . who has a serious health condition." 29 U.S.C. §§ 2601(b)(2), 2612(a)(1)(C). In order to be eligible for leave under the FMLA, an employee must have been employed for at least twelve months by the employer from whom she requests leave, and she must have worked "at least 1,250 hours" for her employer in

the twelve-month period preceding her requested leave.[3]  29 U.S.C. § 2611(2)(A); Erdman, 582 F.3d at 504.  In the matter *sub judice*, Erdman's years of employment with Nationwide clearly establish that the first requirement is satisfied.  With respect to the second requirement, there is a factual question regarding whether Erdman worked a sufficient number of hours to qualify for FMLA leave.[4]  Thus, Nationwide cannot establish, as a matter of law, that the FMLA does not cover Erdman.  Accordingly, the court will turn to the merits of Erdman's FMLA claim.

Two causes of action may arise from a violation of the FMLA: an "interference" claim, alleging that the employer interfered with a FMLA right, and a "retaliation" claim, alleging that the employer took an adverse employment action against the employee in retaliation for taking FMLA leave.  See Erdman, 582 F.3d at 508-09; Bearley v. Friendly, 322 F. Supp. 2d 563, 570-71 (M.D. Pa. 2004); Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 485-89 (D.N.J. 2002).

---

[3] The Third Circuit has rejected Erdman's contention that Nationwide's failure to notify her whether she was eligible for FMLA leave rendered her eligible, regardless of the hours she worked, under 29 C.F.R. § 825.110(d).  It held that "the version of § 825.110 in effect at the time of Erdman's dismissal was invalid" and that Erdman "can only be deemed eligible if the jury finds that she worked the requisite number of hours."  Erdman, 582 F.3d at 507.

[4] The hours of work that count towards FMLA eligibility include "all work that 'the employer knows or has reason to believe . . . is being performed . . . .'" Erdman, 582 F.3d at 504 (quoting 29 C.F.R. § 785.12).  In this case, the evidence, when considered in the light most favorable to Erdman, may support a finding that Nationwide had reason to believe that Erdman was accruing "comp" time by working extra hours from home.  Erdman, 582 F.3d at 504-06.  Erdman had a "longstanding practice of accruing and using 'comp' time," and a reasonable jury may find that Nationwide had constructive notice that this practice continued until Erdman's supervisor explicitly prohibited it.  Id.

1. **Interference**[5]

To succeed on a FMLA interference claim, a plaintiff must demonstrate that he or she was entitled to and denied some benefit under the FMLA. See Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007). In the instant case, as explained supra, there is a question of fact as to whether Erdman was entitled to FMLA leave. Furthermore, the evidence, viewed in the light most favorable to Erdman, supports the conclusion that she was denied a benefit under the FMLA.

---

[5] Nationwide contends that Erdman's interference claim is "a dead letter" because it is premised on a theory of liability that the Third Circuit and this court have rejected. (Doc. 117 at 11-12). Nationwide's argument is inaccurate in two respects, and the court will therefore consider Erdman's interference claim.
    First, the court is not convinced that Nationwide's characterization of Erdman's claim is correct. According to Nationwide, Erdman premised her interference claim solely "on the theory that Nationwide did not provide her with adequate notice of her FMLA rights." (Doc. 117 at 11 (citing Doc. 15 ¶ 23)). But in fact, Erdman's complaint alleges that "Nationwide did not provide proper notice to Brenda Erdman of her FMLA rights *and* unlawfully interfered with Brenda Erdman's rights under the FMLA . . . ." (Doc. 15 ¶ 23 (emphasis added)). The language of Erdman's complaint does not explicitly indicate whether the conjunctive phrase refers generally to all forms of interference or refers restrictively to interference cause by improper notice. While it is true that Erdman made these two allegations in the same sentence, it does not necessarily follow that the first allegation forms the basis of the second.
    Second, the court does not agree that the Third Circuit's opinion forecloses an FMLA interference claim on failure to provide proper notice of FMLA rights. Nationwide correctly notes that this court and the Third Circuit rejected Erdman's argument that she was *deemed* eligible for FMLA rights as a result of Nationwide's failure to notify her whether or not she was eligible. (See Doc. 117 at 12-13). Erdman's "remedial eligibility" argument was based on a version of 29 C.F.R. § 825.110(d) that was in effect at the time of her dismissal, and the Third Circuit held that version of § 825.110 to be invalid. Erdman, 582 F.3d at 507. Thus, an employer's failure to notify an employee of his or her FMLA eligibility does not mandate, *ex jure*, a finding of eligibility. See id. However, the Third Circuit's rejection of Erdman's argument did not express any opinion as to whether failure to provide notification could constitute *interference* with the employee's FMLA rights.

6

If the jury credit's Erdman's evidence indicating that Nationwide terminated her employment because she requested FMLA leave,[6] they could certainly conclude that Nationwide's conduct violated the FMLA, which "prohibits employers from discriminating against employees who request FMLA protected leave." Victorelli v. Shadyside Hosp., 128 F.3d 184, 190 (3d Cir. 1997) (citing 29 U.S.C. § 2615(a)); see also Erdman, 582 F.3d at 509 ("[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."). Hence, the evidence could lead a reasonable jury to find that Nationwide denied Erdman the benefits to which the FMLA entitled her.

### 2. **Retaliation**

To assert a retaliation claim under the FMLA, a plaintiff must demonstrate that: (1) he or she invoked the right to take FMLA leave, (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the exercise of FMLA rights. See Erdman, 582 F.3d at 509, Conoshenti v. Pub. Serv. Elec. & Gas, Co., 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff does so, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action. Conshoshenti, 364 F.3d at 147. However, the employer need not isolate the sole cause for its decision. Id.; Bearley, 322 F. Supp. 2d at 572. Thereafter, the plaintiff bears the burden of demonstrating that the employer's proffered reason is pretextual and rebutting it by either (1) discrediting the reason

---

[6] Erdman's evidence demonstrating a causal connection between her request for FMLA leave and her termination is discussed in detail infra, Part III.A.2.

7

circumstantially or directly, or (2) adducing evidence that discrimination was more likely than not a motivating or determinative cause of the action. See Bearley, 322 F. Supp. 2d at 571-73; see also Parker, 234 F. Supp. 2d at 487, Parker v. Verizon Pa., Inc., 309 F. App'x 551, 556 (3d Cir. 2009) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Regarding Erdman's *prima facie* case, there is no dispute that Erdman requested FMLA leave, nor is there any dispute that Nationwide terminated her employment. The court must therefore examine the causal connection between Erdman's FMLA request and her termination.

When a plaintiff presents "direct evidence"[7] that his FMLA leave was a substantial factor in the adverse employment action, the burden shifts to the employer to demonstrate that the action would have taken place even if the FMLA leave was not considered in the decision-making process. Conoshenti, 364 F.3d at 147 (citing Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002)). Absent direct evidence, timing can be used to infer a causal connection between the leave and the adverse action, although it requires consideration "with a careful eye to the specific facts and circumstances encountered." See Parker, 234 F. Supp. at 492 n.15 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000)). If the timing is not "unduly suggestive," causation may still be inferred from

---

[7] "Direct evidence" is evidence that would suffice to allow a jury to find that the employer placed "substantial negative reliance" on the taking of FMLA leave in deciding to impose the adverse employment action. Conoshenti, 364 F.3d at 147 n.10 (citing Conners v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)).

8

circumstantial evidence of ongoing antagonism or inconsistent reasons for the action. See id.; see also Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) ("[A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period."), Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986) (relying on an employer's "inconsistent explanations" for an adverse employment action to support a finding of causation).

In support of its motion for summary judgment, Nationwide first argues that Erdman "can point to no evidence linking her termination to the request for FMLA leave other than the timing between her request for leave (April 15, 2003), her request for an update (May 6, 2003), and the termination (May 9, 2003)." (Doc. 117 at 14). Nationwide acknowledges that timing can imply a causal connection in some cases, but it argues that "[i]n this case, the 'specific facts and circumstances' do not support a reasonable inference of causal connection." (Id.) Specifically, Nationwide points to the fact that it offered plaintiff a full-time position and followed through in granting her full-time status, even though she declared her intent to seek FMLA leave before accepting Nationwide's offer. (Id. at 14-15; Doc. 63 at 11). Considering the evidence in the light most favorable to Erdman, however, the court cannot find that these facts and circumstances are sufficient to warrant summary judgment. In other words, notwithstanding the fact that Nationwide did not promptly revoke its offer of full-time employment as soon as Erdman mentioned

9

FMLA leave, a reasonable jury could still find that Nationwide's decision to fire Erdman was causally related to her request for FMLA leave.

Contrary to Nationwide's argument, Erdman does not rely solely on the temporal proximity between her request for FMLA leave and Nationwide's termination of her employment to support an inference of causation. Erdman does present an argument on timing, but she also contends that Nationwide's stated reasons for firing her are not valid, and she argues that there is evidence of ongoing harassment and antagonism.[8] The court concludes that Erdman's evidence is

---

[8] A more complete discussion of Erdman's arguments and evidence on these points follows. At this point, although familiarity with the facts of the instant case is presumed, it is worthwhile to note that Nationwide's stated reasons for terminating Erdman's employment include allegations that she engaged in the following behavior: using inappropriate language in a telephone call of May 8, 2003; operating her telephone during the first two hours of her shift, in violation of policy; discussing salary increases with other Nationwide employees; and reporting or discussing certain issues outside the "need to know" chain of command, in violation of policy. Erdman purports to show that none of these alleged incidents are valid. (See Doc. 116 at 13-21).

With respect to the telephone call in which Erdman used inappropriate language, Erdman argues that, pursuant to Nationwide's policy, her supervisor should not have monitored the call. Although all incoming calls are recorded, Nationwide's policy directs managers not to monitor personal calls; thus, when a manager becomes aware that a call is personal, he or she must cease listening to that call immediately. (Doc. 47 at 49:1; Doc. 48 at 158:6-9; Doc. 49, Ex. 16 ¶ 7). Erdman further argues, by reference to her pending motion in limine (Doc. 58), that Nationwide violated both Pennsylvania and federal laws against wiretapping by monitoring the call at issue. In the call, Erdman used inappropriate language after stating, "This is a personal call and should not be reviewed for quality purposes," (see Doc. 49, Ex. 16 ¶ 8), and she therefore contends that her supervisor should have disconnected from the call.

Erdman also notes inconsistencies in her supervisor's testimony about circumstances under which the personal call was monitored and reported up the chain of command. Specifically, Erdman's supervisor testified in her deposition that the call was recorded in April 2003, that she monitored it during her normal

adequate to support a reasonable jury finding of causation between her attempt to

---

practice of random service monitoring, which she conducts at the end of each month, and that she mentioned the inappropriate language in a casual conversation with her supervisor, Mr. Caton, a week or so later. (Doc. 47 at 205-07). Erdman's supervisor later stated in an affidavit that she monitored the call on May 8, 2003, and that she reported the inappropriate language to her supervisor, Mr. Caton, on the same day. (Doc. 44, Ex. A ¶ 8). Nationwide now concedes that the call occurred on May 8, 2003. (Doc. 44 ¶ 19; Doc. 60 ¶ 19).

Erdman also alleges that Nationwide directed her supervisor to monitor all of her calls "as part of Nationwide's focused campaign against her." (Doc. 116 at 13-14). Erdman points to Mr. Caton's notes from a meeting with his boss, which included a note to "monitor who she calls," referring to Erdman, as evidence supporting her position. (Doc. 51 at 46-48; Doc. 51, Ex. 7).

Furthermore, Erdman disputes Nationwide's allegation that she violated company policy by operating her telephone at 10:02 a.m. on May 8, 2003. She admits that her supervisor instructed the team not to take calls during the first two hours of their work day, (see Doc. 47, Ex. 35), and that she began work at 9:00 a.m. However, Erdman provided deposition testimony that her supervisor specifically directed her to begin using her phone at 10:00 a.m., at the same time as the rest of her team members, who began work at 8:00 a.m. (Doc. 40 at 187). Thus, Erdman denies that her conduct violated Nationwide's policy.

Regarding the conversation in which Erdman allegedly questioned another employee about salary increases, Erdman denies that such questioning occurred, and she contends that the individual who accuses her of this conduct is unreliable. (Doc. 40 at 186; Doc. 116 at 17-18). Erdman further argues that Nationwide's policy prohibiting discussions about wage information is unenforceable as a reason for firing her, insofar as it violates the National Labor Relations Act. (Doc. 116 at 17-18).

In addition, Erdman avers that Nationwide has no "need to know" policy preventing employees from notifying managers outside of their work unit about work-related issues or concerns. (Doc. 116 at 20). Indeed, Nationwide's director of associate relations—a manager in the human resources department—testified that, if an employee reported a complaint of a hostile work environment to a manager outside of her direct chain of command, that conduct would not violate any provision of Nationwide's policy guide, nor would it warrant discipline. (Doc. 55 at 60-61).

In sum, Erdman has presented a variety of evidence that calls into question the validity of Nationwide's stated reasons for terminating her. A reasonable jury could view this evidence as suggestive of antagonism against Erdman.

invoke FMLA rights and the termination of her job. Summary judgment is therefore inappropriate.

Nationwide also argues that summary judgment is warranted because "even if Plaintiff could establish a *prima facie* case, she cannot overcome her 'difficult burden' of establishing that Nationwide's reason for terminating her employment . . . was a 'pretext' for retaliation." (Doc. 117 at 15). Plaintiff could demonstrate pretext through evidence that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Parker, 309 F. App'x at 556 (quoting Fuentes, 32 F.3d at 764). Alternatively, plaintiff could "discredit the employer's proffered reason" and prove pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Nationwide's stated reasons to permit a reasonable jury to find them "unworthy of credence." Fuentes, 32 F.3d at 764 (quoting Ezold, 983 F.2d at 531). Nationwide contends that Erdman's arguments are not enough to show pretext. (Doc. 117 at 16). When the court views the evidence in the light most favorable to Erdman, though, it cannot agree with Nationwide. The court concludes that Erdman has shown sufficient weaknesses and inconsistencies in Nationwide's position that a reasonable finder of fact could discredit Nationwide's contention that "incidents of inappropriate workplace behavior" prompted it to terminate Erdman's

employment.[9] Therefore, the court will deny summary judgment on Erdman's FMLA retaliation claim.

**B.     PHRA**[10]

To establish a *prima facie* case of retaliation under the PHRA, Erdman must demonstrate that: (1) she "engaged in a protected activity;" (2) she "was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity," and (3) "there was a causal connection between the protected activity and the adverse action." Foster v. JLG Indus., Inc., 199 F. App'x 90, 94 (3d Cir. 2006). In the instant case, the "protected activity" on which Erdman's PHRA retaliation claim is premised is her request for FMLA leave. Nationwide contends that seeking FMLA leave does not constitute a protected activity within the meaning of the PHRA.

In its initial ruling on Nationwide's motion for summary judgment, dated August 2007, the court noted that the issue of whether requesting FMLA leave is an

---

[9] See supra note 8.

[10] Nationwide argues that Erdman "did not plead a PHRA retaliation claim" and that "[t]he only PHRA claim that Plaintiff's Amended Complaint could reasonably be construed to raise is a claim of discrimination based upon Plaintiff's 'association' with her daughter." (Doc. 117 at 17-18). The court disagrees. Count IV of Erdman's amended complaint, which invokes the PHRA, alleges that "Nationwide's termination of Brenda was in violation of PHRA . . . ." (Doc. 15 ¶ 32). This language does not indicate whether Erdman intended to claim disparate treatment, or retaliation, or both. Contrary to Nationwide's argument, the court finds that it is open to any of these interpretations and construes the language as sufficient to raise a claim of retaliation. For the record, the court also notes that Erdman's reference to her "association" with her daughter appears under Count III, her ADA claim, not under Count IV.

13

activity protected by the PHRA appears to be one of first impression in Pennsylvania. At that juncture, the court predicted that the Pennsylvania Supreme Court would find that an FMLA request qualifies as a protected activity under the PHRA. Erdman argues that the court's ruling was correct, and she invokes the law of the case doctrine.[11] The law of the case doctrine "dictates that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." In re Resyn Corp., 945 F.2d 1279, 1281 (3d Cir. 1991) (quoting Devex Corp. v. General Motors Corp., 857 F.2d 197, 199 (3d Cir. 1988)) (internal quotation marks omitted). As the Supreme Court has stated, however, the doctrine "simply 'expresses' common judicial 'practice'; it does not 'limit' the courts' power." Castro v. United States, 540 U.S. 375, 384 (2003) (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912) (holding that the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power")). The law of the case doctrine "does not apply if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" Agostini v. Felton, 521 U.S. 203, 236 (1997) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)); see also Christianson v.

---

[11] Erdman also argues that, under the law of the case doctrine, Nationwide is bound by a determination that requesting FMLA leave is a protected activity within the meaning of the FMLA. Erdman notes that the court has already opined that seeking FMLA leave is a "protected activity" under the PHRA, and that the analysis for retaliation actions under the PHRA and the FMLA are identical. The court need not address Erdman's argument on this point, because Nationwide does not dispute that seeking FMLA leave is protected under the FMLA.

14

Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . .").

Defendants ask the court to revisit its ruling of August 2007, citing two 2008 cases decided by sister courts in the Western District and the Eastern District of Pennsylvania. In Saellam v. Norfolk Southern Corp., No. 06-0123, 2008 WL 5286836 (W.D. Pa. Dec. 19, 2008), the court held that "Plaintiff's taking of FMLA leave, his complaints about alleged FMLA harassment, and/or his complaints . . . regarding safety issues are not protected activity within the meaning of Title VII [or the PHRA]." 2008 WL 5286836 at *11. Similarly, in McCormick v. Allegheny Valley Sch., No. 06-3332, 2008 WL 355617 (E.D. Pa. Feb. 6, 2008), the court held that a request for maternity leave under the FMLA "cannot constitute a statutorily protected activity for purposes of a Title VII [or PHRA] retaliation claim." 2008 WL 355617 at *17. In addition, defendant argues that the language of the PHRA[12] undermines the notion that the activities protected under the PHRA include seeking FMLA leave. (Doc. 117 at 22).

---

[12] The relevant provision prohibits discriminating "in any manner against any individual because such individual as opposed any practice forbidden by the act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding, or hearing under this act." 43 PA. CONS. STAT. § 955(d).

15

The court is not persuaded that it should reverse its earlier decision. The fact that other district courts, in unpublished decisions, have expressed opinions contrary to this court's prediction does not render this court's conclusion "clearly erroneous," nor has defendant shown that it "would work a manifest injustice." See Agostini, 521 U.S. at 236. Defendant's argument regarding the language of the PHRA also falls short of this standard. The question of whether invoking one's right to FMLA leave is an activity protected by the PHRA has not been settled by any authoritative source of law, and the court's prediction that the Pennsylvania Supreme Court would find it to be a protected activity remains viable. Indeed, as Erdman notes, the correlating purposes of the PHRA and the FMLA support the court's conclusion that seeking FMLA leave should be a protected activity under the PHRA.[13] For the foregoing reasons, the court is not convinced that the circumstances warrant reconsideration of its holding of August 2007.

In light of the fact that the court's conclusion will remain in tact, Erdman's PHRA retaliation claim will parallel her FMLA retaliation claim. Therefore, for the reasons stated in the court's analysis of Erdman's FMLA retaliation claim,[14] summary judgment on this claim will be denied.

---

[13] Erdman observes that the PHRA prohibits sex-based discrimination, and that the congressional findings in the FMLA "expressly delineate how sexual/gender discrimination can occur in caretaker roles and how the purpose of the FMLA is to minimize employment discrimination based on sex." (Doc. 116 at 24).

[14] See supra part III.A.2.

## IV. Conclusion

Erdman has come forth with sufficient evidence on her FMLA claims of interference and retaliation to survive summary judgment. Summary judgment is similarly unwarranted on Erdman's PHRA claim of retaliation. Thus, the court will deny Nationwide's motion (Doc. 42) for summary judgment. An appropriate order will issue.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: January 15, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA L. ERDMAN,** | : | CIVIL ACTION NO. 1:05-CV-0944 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **NATIONWIDE INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

## **ORDER**

AND NOW, this 15th day of January, 2010, upon consideration of upon consideration of the judgment (Doc. 106) of the Third Circuit Court of Appeals entered in the above-captioned case, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 42) is DENIED.

2. A revised pretrial and trial schedule shall issue by future order of court.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge