**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION**

| | | |
|---|---|---|
| BRENDA L. ERDMAN, | : | CIVIL ACTION NO. 1:05-CV-0944 |
| | : | |
| Plaintiff | : | |
| | : | (JUDGE CONNER) |
| vs. | : | |
| | : | |
| NATIONWIDE  MUTUAL | : | |
| INSURANCE CO., INC., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | FILED ELECTRONICALLY |

---

## PLAINTIFF'S PRETRIAL MEMORANDUM

---

The Local Rule ("L.R.") 16.3 conference of counsel was held by agreement on April 7, 2010, followed by multiple telephone conferences/email correspondences thereafter between counsel. Pursuant to L.R. 16.3(b) counsel for both Brenda L. Erdman ("Ms. Erdman" or "Plaintiff") and Nationwide Mutual Insurance Company, Inc. ("Nationwide" or "Defendant") have had discussions respecting settlement. Counsel for Plaintiff is currently waiting to hear back from counsel for Defendant respecting Plaintiff's "best and final" demand, for which Plaintiff has been advised that Nationwide is giving serious consideration. However, in the event Plaintiff's best and final offer is rejected by Nationwide, the case will proceed to trial, of necessity.

A.    FEDERAL JURISDICTION

1.    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 (Federal question), which provides for original jurisdiction of this Court on all actions arising under the laws of the United States of America.

2.    Jurisdiction of the pendent State claim is conferred upon this Court by 28 U.S.C. § 1367 (supplemental jurisdiction).

B.    SUMMARY OF FACTS AND CONTENTIONS AS TO LIABILITY

This lawsuit arises out of the unlawful discrimination, interference, retaliation and wrongful discharge of Ms. Erdman by Nationwide in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.* ("PHRA")[1], by way of Nationwide's discharge of Ms. Erdman after twenty-three (23) years of exemplary service to the Company, following closely upon the heels of her request for FMLA leave to care for and supervise her Down Syndrome daughter, Amber.

Once Ms. Erdman exercised her lawful right to request unpaid leave under the FMLA, she found herself the recipient of a focused and insidious campaign by her supervisor, Stella Getgen, and other Nationwide managers, including the head of Nationwide's Human Resources Department at the Harrisburg Service Center where Ms. Erdman worked.  The campaign was intended to develop unfounded

---

[1] Ms. Erdman's association discrimination claim under the American with Disabilities Act and her common law breach of contract claim have been previously dismissed by the Court and are no longer a part of this case for purposes of trial.

and pre-textual bases upon which to fire her to prevent her from taking FMLA leave, to which she was lawfully entitled to care for her dependent daughter, who suffers from Down Syndrome, a serious health condition. Nationwide unlawfully interfered with Ms. Erdman's FMLA leave request by, *inter alia*, advising Nationwide's Office of Health Services ("OHS"), to which Ms. Erdman was told to direct her FMLA request, to be aware for the potential for a "less than accurate portrayal" by Ms. Erdman of her FMLA request. Moreover, the OHS was further advised that Ms. Erdman's leave request, made in March-April 2003, came at a time that was inopportune for the business unit in which Ms. Erdman worked, despite that Ms. Erdman, based upon Nationwide's own seniority system, had already requested and received approval to take vacation, as she had in prior years, during the month of August, 2003. See Ed Nieves Depo. (Dkt. 48) Exh. 21, wherein Mr. Nieves stated, "The request for unpaid time off is extensive and would create a difficult burden for the business unit, especially coming during a heavy period of vacation time for other associates."

Ms. Erdman also suffered retaliation under both the FMLA and the PHRA at the hands of Nationwide management by way of Nationwide's unlawful termination of her employment after she exercised her right to request FMLA leave. Ms. Erdman has demonstrated that Nationwide's alleged, "multiple instances of workplace misconduct", are merely pretexual bases for her firing and

that the true reason that she was fired was in retaliation for her exercising her rights under the FMLA.   As a result, Ms. Erdman seeks redress for her FMLA interference and retaliation claims and her PHRA retaliation claim in this lawsuit.

## C.   STATEMENT OF UNDISPUTED FACTS

See attached Statement of Undisputed Facts, appended hereto as Exhibit "A".

## D.   DAMAGES

1.    The principal injuries sustained are:   the unlawful interference by Nationwide under the FMLA and unlawful retaliation by Nationwide under the FMLA and the PHRA, which resulted in Ms. Erdman's discharge by Nationwide after twenty-three (23) years of exemplary employment and her concomitant loss of employment, compensation, and benefits.

2.    Hospitalization and convalescence:  None.

3.    Present disability:  N/A

4.    Special monetary damages:    See Number 1 above which is incorporated by reference.  Said economic damages from loss of past earnings and benefits, prejudgment interest, liquidated damages and future earnings approach $1.2 million, as calculated by Plaintiff's economic expert, Harry M. Leister, Jr., F.S.A.

5.    Emotional distress, mental anguish and humiliation damages estimated to be in excess of $100,000.00.

6.    Plaintiff hereby also demands statutory reimbursement for attorneys' fees, interest and costs included under the FMLA and PHRA totaling approximately $340,000.00.

E.    WITNESSES

Fact Witnesses:

1.    Brenda L. Erdman, Plaintiff
      15 Trout Lane
      Marysville, PA  17053

2.    Patty Sarno (as on cross)
      Nationwide Mutual Insurance Co., Inc.
      1000 Nationwide Drive
      Harrisburg, PA  17110

3.    Edwin Nieves (as on cross)
      Nationwide Mutual Insurance  Co., Inc.
      1000 Nationwide Drive
      Harrisburg, PA  17110

4.    Stella Getgen (as on cross)
      Nationwide Mutual Insurance Co., Inc.
      1000 Nationwide Drive
      Harrisburg, PA  17110

5.    Lynn Delgarn (as on cross)
      10 Juniper Creek Blvd.
      Pinehurst, NC  28374-6804

6.    Mary Agnes Hopkins, R.N. (as on cross)
      6401 Stones Dairy Road
      Bassett, Virginia 24055,

7.    Rebecca Thompson, R.N. (as on cross)
      15415 Township Road 496
      Thornville, OH 43076-8997

8.    Jane Goudy (as on cross)
      116-A North Railroad Street
      Palmyra, PA 17078

9.    Randy Caton (as on cross)
      Nationwide Mutual Insurance Co., Inc.
      1000 Nationwide Drive
      Harrisburg, PA 17110

10.   Anna Hipple (as on cross)
      Nationwide Mutual Insurance Co., Inc.
      1000 Nationwide Drive
      Harrisburg, PA 17110

11.   Kathleen Herath (as on cross)
      One Nationwide Plaza
      Columbus, OH 43215

12.   Peter Hendey (as on cross)
      One Nationwide Plaza
      Columbus, OH 43215

F.    EXPERT WITNESS

1.    Harry M. Leister, Jr., F.S.A.
      Conrad Siegel
      501 Corporate Circle
      Harrisburg, PA 17110

Harry M. Leister, Jr., F.S.A. is an icon and well respected as an expert

actuary by the Judges of the Federal Court for the Middle District of Pennsylvania.

Mr. Leister has been a principal of Conrad Siegel Actuaries since 1968. He

graduated from Susquehanna University in 1956 with a Bachelors of Science Degree and took graduate studies at Bucknell University in 1956. He became a Fellow of the Society of Actuaries (by examination) in 1961. Mr. Leister estimates that he has testified in court proceedings over the course of his career approximately 700 times. He has testified for both plaintiffs and defendants. A copy of his June 13, 2006 Report, his December 3, 2009 Supplemental Report, his June 29, 2006 Curriculum Vitae and the December 9, 2009 Curriculum Vitae update, are all collectively attached as Exhibit "B" and incorporated by reference.

G.    SUMMARY OF TESTIMONY OF EXPERT WITNESS

Mr. Leister will provide expert testimony on the economic damages suffered by Ms. Erdman under three possible productivity factors, each reflecting damages incurred by Ms. Erdman as a result of Nationwide's unlawful termination of her employment.

H.    SPECIAL COMMENTS ON PLEADINGS AND DISCOVERY

Outstanding Motions to be resolved by the Court:

1.    Plaintiff's Renewed Motion in Limine to Strike all References to the Unlawfully Intercepted May 8, 2003 Personal Telephone Call of Brenda L. Erdman;

2.    Plaintiff's Motion in Limine to Exclude United States Department of Labor Investigatory File and Related Documents;

3.    Defendant's Renewed Motion in Limine to Exclude Plaintiff's Evidence of Unreported Extra Hours Worked; and

4.    Defendant's Motion in Limine to Exclude Evidence or Argument Related to National Labor Relations Act.

I.    SUMMARY OF LEGAL ISSUES

**1.    WHETHER NATIONWIDE UNLAWFULLY INTERFERED UNDER THE FMLA WITH BRENDA ERDMAN'S REQUEST FOR FMLA LEAVE TO CARE FOR HER DEPENDENT DAUGHTER, AMBER?**

Three (3) provisions of the FMLA collectively form the basis of liability under the FMLA. See *Erdman v. Nationwide Ins. Co.*, 582 F. 3d 500, 504-506, 92 Empl. Prac. Dec. P. 43, 680, 158 Lab. Cas. P. 35, 646, 15 Wage and Hour Cas. 2d (BNA) 513, 22 A.D., Cases 669, 39 NDLR P. 239 (3rd Cir. 2009). 29 U.S.C. § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter."

29 U.S.C. § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

29 C.F.R. § 825.220(c) prohibits employers from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."

In *Erdman*, the Third Circuit Court of Appeals made clear that for purposes of stating a retaliation claim under the FMLA, the claimant need not have taken FMLA leave stating, "We therefore hold that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Id.* at 509.

"Interfering with" the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under the FMLA. 29 C.F.R. § 825.220(b).

### 2. WHETHER NATIONWIDE UNLAWFULLY RETALIATED UNDER THE FMLA AGAINST BRENDA ERDMAN FOR REQUESTING FMLA LEAVE TO CARE FOR HER DEPENDENT DAUGHTER, AMBER?

29 C.F.R. § 825.220(c), cited in pertinent part above, constitutes the discrimination/retaliation provision of the FMLA. *Erdman, supra* at 506. Throughout this proceeding, Nationwide has contested Ms. Erdman's eligibility, based upon her purported lack of hours; however, as related to the elements necessary to demonstrate retaliation under the FMLA, Nationwide has contested only the causal connection between her request for FMLA leave and Nationwide firing her. As related to causal connections, the timing of Ms. Erdman's FMLA leave requests in March, April and May 2003, coupled with the termination of her employment on May 9, 2003, the very day on which Ms. Erdman has requested

Nationwide's definitive response to her FMLA request, satisfies the causal element for FMLA retaliation. "Temporal proximity between the protected activity and the termination may be sufficient to establish a causal link." *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3rd Cir. 1989). Moreover, circumstantial evidence that supports the inference of retaliation can substantiate the causal connection needed. *Farrell v. Planter's Lifesavers Co.*, 206 F.3d 271, 280 (3rd Cir. 2000), quoting *Koontz v. USX Corp.*, 99-3191 2001 U.S. Dist. LEXIS 9319 (E.D. Pa., July 2, 2001).

However, as astutely noted by this Honorable Court in its January 15, 2010 Memorandum Opinion and Order Denying Nationwide's Motion for Summary Judgment on Erdman's remaining FMLA and PHRA[2] claims (hereafter, "January 15, 2010 Mem Op. at _____"), in addition to timing, the court may look to, "circumstantial evidence of ongoing antagonism or inconsistent reasons for the [adverse employment] action." January 15, 2010 Mem. Op. at pp. 8-9. In its January 15, 2010 Memorandum Opinion, this Honorable Court examined, in great detail, the evidence adduced by Ms. Erdman, in addition to the temporal evidence, to document the causal connection between Ms. Erdman's request for FMLA leave and Nationwide's firing her after twenty-three (23) years of exemplary service. Ms. Erdman incorporates herein by reference the succinct summary of the evidence respecting Nationwide's ongoing antagonism towards Ms. Erdman and

---

[2] It is compelling to note that Nationwide's Motion constituted its third attempt to have Ms. Erdman's claims dismissed on summary judgment.

its inconsistent and unsubstantiated reasons for its decision to fire her, as examined by the court in Footnote #8 of its January 15, 2010 Memorandum Opinion.

3.    **WHETHER NATIONWIDE UNLAWFULLY RETALIATED AGAINST BRENDA ERDMAN UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT?**

The Pennsylvania Human Relations Act, 43 P.S. § 955, et. seq. is generally applied in accordance with Title VII. *Dici v. Com. of Pennsylvania*, 91 F.3d 542 (3rd Cir. Pa. 1996). The elements required to demonstrate retaliation under the PHRA are identical to those to demonstrate retaliation under the FMLA and the ADA. *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F. Supp. 2d 311, 322 (W.D. Pa. 2004). Additionally, on June 22, 2006, the United States Supreme Court in a unanimous decision in *Burlington Northern and Sante Fe Railroad Company v. White*, 126 S.Ct. 2405, 2006 Westlaw 1698953 (2006), applied a much broader test for retaliation under Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3-a, than had previously been applied by many federal courts. The Supreme Court opined that any action that materially injures or harms an employee who has complained of discrimination and would "dissuade a reasonable worker from making or supporting a charge of discrimination" can constitute actionable retaliation. *Id.* at 1. Indeed, the Court held that actionable retaliation can extend well beyond "workplace" or "employment related" retaliating acts and harm. *Id.* at 10. Application of the *Burlington Northern* criteria to the case at bar is required by

*Dici, supra* and would justify a finding in this case that Nationwide unlawfully retaliated against Ms. Erdman by firing her for requesting FMLA leave. Moreover, while the Pennsylvania Supreme Court has not yet opined whether a request for FMLA leave constitutes protected activity under the PHRA, Ms. Erdman contends this court's analysis and holding in its January 15, 2010 Memorandum Opinion is correct that the Pennsylvania Supreme Court would hold that a request for FMLA is protected activity under the PHRA. Moreover, that legal issue has already been decided by this Honorable Court and is now the law of the case in this matter. Therein, this Honorable Court noted, "…the correlating purposes of the PHRA and the FMLA support the court's conclusions that seeking FMLA leave should be a protected activity under the PHRA," citing to the PHRA's prohibition on sex discrimination and the Congressional finding in the FMLA that, "expressly delineates how sexual/gender discrimination can occur in caretaker roles and how the purpose of the FMLA is to minimize employment discrimination based on sex." Mem. Op. at p. 16.

### 4. WHETHER NATIONWIDE'S FAILURE TO PROVIDE PLAINTIFF ERDMAN WITH REQUIRED NOTICES CONSTITUTES UNLAWFUL INTERFERENCE UNDER THE FMLA?

Nationwide's failure to advise Ms. Erdman of her FMLA eligibility prior to firing her, when Nationwide itself was aware that Ms. Erdman may not have worked the requisite 1250 hours, according to its official time records, may

constitute unlawful interference under the FMLA. See Mem. Op. at p. 6. Had Ms. Erdman been advised by Nationwide prior to being fired that she lacked the requisite number of hours, Ms. Erdman could have amended her leave request to make certain that her FMLA leave did not commence until she had earned the requisite 1250 hours for FMLA eligibility, according to Nationwide's time records. Nationwide's failure to provide her such notice prevented her from amending her leave request and thus, unlawfully interfered with her FMLA rights.

### 5. WHETHER PLAINTIFF ERDMAN WAS AN ELIGIBLE EMPLOYEE UNDER FMLA?

In *Erdman*, the Third Circuit Court of Appeals stated:

> The first question is whether a reasonable jury could have concluded that Nationwide had actual or constructive notice that Erdman worked at least 1,250 hours, making her eligible under the FMLA. For FMLA purposes, all work that 'the employer knows or has reason to believe…is being performed' counts toward the threshold requirement. 29 C.F.R. § 785.12. The parties agree that hours worked off-site or beyond an employee's regular schedule count if '[the employer] knows or has reason to believe that an employee is continuing to work extra hours.' 29 C.F.R. § 785.11. '[A]n employer need not have actual knowledge of such off-site work; constructive knowledge will suffice.' *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998). *Id.* at 504.

As clearly noted by the Third Circuit, "the issue is not what Erdman thought, but what Nationwide communicated to her, and whether the company "acquiesced in [] the off-the-clock work." *Id.* at 505, Ms. Erdman clearly worked to the benefit

of Nationwide when working her additional hours and Ms. Erdman should be afforded the opportunity to present evidence to the jury of her off-the-clock hours worked for the benefit of Nationwide, including introduction of the calendars and diaries which she kept contemporaneously with the work performed to document the accuracy of the hours she is asserting she worked.

6. **WHETHER PLAINTIFF PROVIDED THE REQUISITE 1250 HOURS-OF-SERVICE TO NATIONWIDE IN THE TWELVE MONTHS PRECEDING HER REQUESTED FMLA LEAVE?**

See analysis under Question #5 above, which is incorporated by reference, and 29 U.S.C. § 2611(2)(a) and 29 U.S.C. § 2612(a)(1)(c). The test of whether an employee engages is working hours or hours of service for purposes of FMLA is whether the time spent by the employee is predominantly for the employer's, as compared to the employee's, interest. Here, Nationwide has not disputed that the off-the-clock hours of service performed by Ms. Erdman benefited Nationwide. Nationwide only contests whether Ms. Erdman had those hours approved and/or whether Nationwide had either actual or constructive notice of them. *Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767, 3 Wage and Hour CAF. 2d (BNA) 161, 67 Empl. Prac. Dec. (CCH) 43929, 131 Lab. CAF. P 33,353 (N.D. Georgia 1996). Nationwide did not have to pre-approve Ms. Erdman's hours, contrary to Nationwide's assertion. Ms. Erdman need only demonstrate actual or constructive notice of same by Nationwide.

14

7.  **WHETHER BRENDA ERDMAN'S TERMINATION FOR "WORKPLACE MISCONDUCT" WAS PRE-TEXTUAL AND IN VIOLATION OF THE INTERFERENCE AND RETALIATION PROVISIONS OF THE FMLA?**

29 U.S.C. § 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter."

29 U.S.C. § 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." "Interfering with" the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA. 29 C.F.R. § 825.220(b). The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. 29 C.F.R. § 825.220(a). See also the legal analysis under Questions # 1 and 2, which are incorporated by reference.

8.  **WHETHER PLAINTIFF WAS DISCHARGED TO PREVENT HER FROM PURSUING FMLA LEAVE AND/OR TO PREVENT HER FROM REACHING 1250 DOCUMENTED HOURS OF SERVICE?**

29 U.S.C. § 2615(a)(2), cited in pertinent part above, constitutes the discrimination provision of the FMLA. 29 C.F.R. § 825.220(a), cited in pertinent

part above, constitutes the retaliation provision of the FMLA. Timing of Ms.

Erdman's FMLA leave requests in March, April and May 2003, coupled with the

termination of her employment on May 9, 2003, the very day upon which Ms.

Erdman had requested Nationwide's response to her FMLA request, satisfies the

causal element for FMLA retaliation. "Temporal proximity between the protected

activity and the termination may be sufficient to establish a causal link." *Jalil v.*

*Avdel Corp.,* 873 F.2d 701, 708 (3rd Cir. 1989). Moreover, circumstantial evidence

that supports the inference of retaliation can substantiate the causal connection

needed. *Farrell v. Planter's Lifesavers Co.,* 206 F.3d 271, 280 (3rd Cir. 2000),

quoting *Koontz v. USX Corp.*, 99-3191 2001 U.S. Dist. LEXIS 9319 (E.D. Pa., July

2, 2001). See also the legal analysis under Questions #1 and 2 above, which are

incorporated by reference, and the Third Circuit Court of Appeals decision which

held, "It would be patently absurd if an employer who wished to punish an

employee for taking FMLA leave could avoid liability simply by firing the

employee before the leave begins." *Erdman* at 508.

9.    **WHETHER BRENDA ERDMAN'S HOURS WORKED IN ADDITION TO HER REGULARLY SCHEDULED HOURS FOR THE BENEFIT OF NATIONWIDE QUALIFY AS "HOURS-OF-SERVICE" UNDER 29 U.S.C. § 2611(2)(A)(ii)?**

In *Erdman*, the Third Circuit Court of Appeals stated:

The first question is whether a reasonable jury could have concluded
that Nationwide had actual or constructive notice that Erdman worked

16

at least 1,250 hours, making her eligible under the FMLA. For FMLA purposes, all work that 'the employer knows or has reason to believe...is being performed' counts toward the threshold requirement. 29 C.F.R. § 785.12. The parties agree that hours worked off-site or beyond an employee's regular schedule count if '[the employer] knows or has reason to believe that an employee is continuing to work extra hours.' 29 C.F.R. § 785.11. '[A]n employer need not have actual knowledge of such off-site work; constructive knowledge will suffice.' *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998). *Id.* at 504.

The Third Circuit clearly noted, "the issue is not what Erdman thought, but what Nationwide communicated to her, and whether the company "acquiesced in [] the off-the-clock work." *Id.* at 505. Ms. Erdman clearly worked to the benefit of Nationwide when working her additional hours.

See also 29 U.S.C. § 2611(2)(a) and 29 U.S.C. § 2612(a)(1)(c). The test of whether an employee engages in working hours or hours of service for purposes of FMLA is whether the time spent by the employee is predominantly for the employer's interest. Here, Nationwide has not disputed that the off-the-clock hours of service performed by Ms. Erdman were for Nationwide's benefit. Nationwide only contests whether Ms. Erdman had those hours approved and/or whether Nationwide had actual or constructive notice of them. *Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767, 3 Wage and Hour CAF. 2d (BNA) 161, 67 Empl. Prac. Dec. (CCH) 43929, 131 Lab. CAF. P 33,353 (N.D. Georgia 1996).

The Third Circuit analysis sets forth a detailed analysis of the evidence which Ms. Erdman will present at trial and concluded for purposes of denying summary judgment to Nationwide on Ms. Erdman's FMLA interference and retaliation claims, that a reasonable jury could conclude that Nationwide had actual or constructive notice of Ms. Erdman's off-the-clock hours worked for the benefit of Nationwide. *Id*. at 506. Ms. Erdman intends to present that same evidence to the jury.

**10.    WHETHER NATIONWIDE MUST APPROVE MS. ERDMAN'S WORK IN ADDITION TO HER REGULARLY SCHEDULED HOURS FOR THE TIME TO BE CONSIDERED HOURS-OF-SERVICE UNDER FMLA?**

In *Erdman*, the Third Circuit Court of Appeals stated:

> The first question is whether a reasonable jury could have concluded that Nationwide had actual or constructive notice that Erdman worked at least 1,250 hours, making her eligible under the FMLA. For FMLA purposes, all work that 'the employer knows or has reason to believe...is being performed' counts toward the threshold requirement. 29 C.F.R. § 785.12. The parties agree that hours worked off-site or beyond an employee's regular schedule count if '[the employer] knows or has reason to believe that an employee is continuing to work extra hours.' 29 C.F.R. § 785.11. '[A]n employer need not have actual knowledge of such off-site work; constructive knowledge will suffice.' *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998). *Id*. at 504.

As clearly noted by the Third Circuit when they stated, "The issue is not what Erdman thought, but what Nationwide communicated to her, and whether the company "acquiesced in [] the off-the-clock work." *Id*. at 505.

See also 29 U.S.C. § 2611(2)(a) and 29 U.S.C. § 2612(a)(1)(c). The test of whether an employee engages is working hours or hours of service for purposes of FMLA is whether the time spent by the employee is predominantly for the employer's interest. Here, Nationwide has not disputed that the off-the-clock hours of service performed by Ms. Erdman were for Nationwide's benefit. Nationwide only contests whether Ms. Erdman had those hours approved and/or whether Nationwide had actual or constructive notice of them. *Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767, 3 Wage and Hour CAF. 2d (BNA) 161, 67 Empl. Prac. Dec. (CCH) 43929, 131 Lab. CAF. P 33,353 (N.D. Georgia 1996).

Additionally, 29 C.F.R. § 785.12 states that worked performed away from the premises or job site is compensable under the FLSA if the employer knows or has reason to believe that the work is being performed. Thus, *Erdman* and the statutory and regulatory citations above make clear that the employer does not have to have actual knowledge or to have pre-approved the time worked, contrary to Nationwide's assertions. The employer must count such time of which it had actual or constructive notice as "hours worked" or, as applied to the FMLA, as "hours-of-service."

J.    STIPULATION DESIRED

The parties stipulate and agree as follows: that documents identified by an asterisk on Exhibit "C" to Plaintiff's Pretrial Memorandum, "Plaintiff's List of

Exhibits" are authentic and admissible as identified. Plaintiff Erdman anticipates being able to stipulate with defense counsel to the authenticity of additional documents prior to the commencement of trial. Plaintiff Erdman also requests Nationwide stipulate that she suffered an adverse employment decision upon her firing and that Plaintiff Erdman's daughter, Amber, suffered from Down Syndrome, which is a serious health condition under the FMLA. Other evidentiary issues are reserved for trial.

K.    ESTIMATE OF TRIAL LENGTH

     4 – 5 days

L.    OTHER MATTERS

    1.    Whether Nationwide should be precluded from presenting testimony that the RET unit in which Ms. Erdman worked at the time of her firing, was ultimately discontinued by Nationwide in May 2009, which was six (6) years after Nationwide fired Ms. Erdman. Moreover, Nationwide has provided no sworn testimony respecting the closing of the RET unit and/or its impact upon the employees working there at the time of closing and Ms. Erdman had no opportunity to conduct discovery of same;

    2.    Whether the court will permit one of Plaintiff's counsel to open and the other to close;

3.    Whether the court will permit Plaintiff's counsel to alternate witnesses for purposes of direct and cross-examination; and

4.    The need to accommodate the schedules of Plaintiff's expert, Harry Leister, who is not available on May 6-10, 2010 and Nationwide's witness Lynn Delgarn, who must travel from North Carolina and who is available only on certain dates [to be provided by Nationwide].

M.    SCHEDULE OF EXHIBITS

See attached Exhibit "C", "Plaintiff's List of Exhibits."

N.    SPECIAL VERDICT QUESTIONS

Plaintiff Erdman has no Special Verdict Questions but submits for consideration the Proposed General Verdict with Interrogatories, attached as Exhibit "D."

O.    DEFENSE COUNSEL STATEMENT OF SETTLEMENT AUTHORITY

N/A

P.    DEPOSITIONS/VIDEOTAPE

Plaintiff's counsel anticipates using relevant portions of the depositions of Peter Hendey, Kathleen Herath, Rebecca Thompson, R.N. and possibly Lynn Delgarn.

Q.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

    1.    Proposed Findings of Fact

        a.    N/A

    2.    Proposed Conclusions of Law

        a.    N/A

R.    VOIR DIRE QUESTIONS

Plaintiff's voir dire questions will be provided pursuant to the Scheduling Order, dated December 28, 2009, entered in this case.

Respectfully submitted,

**DALEY ZUCKER MEILTON MINER & GINGRICH, LLC**

Date: April 14, 2010          By:    /s/ Patricia Carey Zucker
                                  Patricia Carey Zucker, Esquire
                                  Attorney I.D. No. 37334
                                  Kathleen Misturak-Gingrich, Esquire
                                  Attorney I.D. No. 41682
                                  1035 Mumma Road, Suite 101
                                  Wormleysburg, PA  17043
                                  (717) 724-9821
                                  pzucker@dzmmglaw.com
                                  kgingrich@dzmmglaw.com
                                  Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *Plaintiff's Pretrial Memorandum* has been electronically filed and the Clerk of Court will send notification of such filing by the Court's electronic mailing system upon Donald R. Keller, Esquire, Bricker & Eckler, LLP, 100 S. Third Street, Columbus, Ohio 43215, attorney for Defendant, on this 14th day of April, 2010.

/s/Patricia Carey Zucker
Patricia Carey Zucker, Esquire
Counsel for Plaintiff

23